

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| WILLIAM AND CHANTAL CAREY, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | NO. 4:11-CV-136-A |
| | § | |
| FEDERAL HOME LOAN MORTGAGE CORPORATION, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
and
ORDER

The court has not been persuaded that it has subject matter jurisdiction over the above-captioned action. Therefore, the court is ordering the action remanded to the state court from which it was removed.

I.

Background

On January 24, 2011, the above-captioned action was initiated by William and Chantal Carey against Federal Home Loan Mortgage Corporation in the District Court of Tarrant County, Texas, 348th Judicial District, as Cause No. 348 250623 11. By notice of removal filed March 2, 2011, Defendant removed the action to this court, alleging that this court had subject matter jurisdiction by reason of diversity of citizenship, as contemplated by 28 U.S.C.

§ 1332, and that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, as contemplated by § 1332(a). Defendant acknowledged in the notice of removal that the amount in controversy is not apparent from the face of plaintiffs' state court pleading, but it asserted that (1) the fact that the property at issue in the litigation sold at public auction for $147,284.37 on March 2, 2010, combined with the request of plaintiffs for a reconveyance of their right, title, and interest in the property, indicates that the property value is well above the $75,000 limit for removal, and (2) the claim of plaintiffs for an unspecified amount of damages more likely than not puts in excess of $75,000 in controversy.

Because of a concern that defendant had not provided the court with information that would enable the court to find the existence of the requisite jurisdictional amount, the court arranged for a telephone conference/hearing on April 27, 2011, with attorneys for the plaintiffs and attorneys for the defendant on the line. After having made an evaluation of the pleadings in this action, the information gained by the court during the telephone conference/hearing, and, after reviewing the case authorities submitted by counsel for defendant on May 4, 2011, the

court remains unpersuaded that the requisite jurisdictional amount exists.

II.

## Basic Principles

The court starts with a statement of basic principles announced by the Fifth Circuit:

"The removing party bears the burden of showing that federal subject matter jurisdiction exists and that removal was proper." Manguno v. Prudential Prop. Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002). "Moreover, because the effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns, which mandate strict construction of the removal statute."[1] Carpenter v. Wichita Falls Indep. Sch. Dist., 44 F.3d 362, 365-66 (5th Cir. 1995). Any doubts about whether removal jurisdiction is proper must therefore be resolved against the exercise of federal jurisdiction. Acuna v. Brown Root Inc., 200 F.3d 335, 339 (5th Cir. 2000).

---

[1] The removal statute, 28 U.S.C. § 1441(a), provides, in pertinent part, that:

[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

(emphasis added).

3

To determine the amount in controversy, the court ordinarily looks to the plaintiff's state court petition. Manguno, 276 F.3d at 723. If it is not facially apparent from the petition that the amount in controversy exceeds the requisite amount, the removing party must set forth summary judgment-type evidence, either in the notice of removal or in an affidavit, showing that the amount in controversy is, more likely than not, greater than $75,000. Id.; Allen v. R & H Oil & Gas Co., 63 F.3d 1326, 1335 (5th Cir. 1995).

The amount in controversy is measured from the perspective of the plaintiff. In an action for declaratory or injunctive relief, the amount in controversy is the "value of the object of the litigation." Leininger v. Leininger, 705 F.2d 727, 729 (5th Cir. 1983). It is also "the value of the right to be protected or the extent of the injury to be prevented." Id.

### III.

### The True Nature of Plaintiff's Claims

The pleading (referred to as a "petition") by which the action was instituted in state court does not specify a dollar amount of recovery sought, nor does it define in any way the value of the right sought to be protected or the extent of the injury sought to be prevented. Rather, the allegations of the petition are typical of many state court petitions that are brought before

4

this court by notices of removal in which the plaintiff has made vague, general, and obviously legally baseless allegations in an attempt to frustrate the procedures a lender is pursuing, or has pursued, to regain possession of residential property the plaintiff used as security for the making of a loan. As the court has been required to do in other cases of this kind, the court has undertaken an evaluation of the true nature of plaintiff's claims. The court has been aided by the following explanation given by counsel for plaintiffs during the telephone conference/hearing:

> THE COURT: Well, what is their point? What is the point in the lawsuit?
>
> MR. KIMBALL: The lawsuit surrounds a loan modification that the Careys tried to enter into with Wells Fargo. They would get an okay, and then they would get a denial. And they would do what they were supposed to do again, and they would get an okay, and then they would get a denial. Went back and forth now for a couple of years.
>
> And the contention is that Wells Fargo failed to apply something right at 4,000, between 3800 and $4,000 worth of payments made by the Careys against the note and folded into the loan modification. And it just got crossways and went downhill, and then the foreclosure came on from Freddie Mac.
>
> THE COURT: Are they -- do they contend they are current in their payment obligations?
>
> MR. KIMBALL: No, sir, they do not. They are not anywhere close to current.

5

> THE COURT: Well, why haven't they kept their payment obligations current?
>
> MR. KIMBALL: Your Honor, I cannot answer that other than they are mad at Wells Fargo for not, you know, finishing the deal like Wells Fargo said they were going to.
>
> THE COURT: Well, what relief did -- conceivable relief do your clients think they could get out of this lawsuit?
>
> MR. KIMBALL: They originally would like to get back to where they began with the loan modification, and get back to the square one and get the loan back where it should be, but that's going to take a couple of years worth of payments to do so, and at this point they don't have that.
>
> So it's just gotten so underwater at this point now that I don't know -- it's just trying to unwind the foreclosure and get back into the negotiations. But, again, they don't want a loan from Wells Fargo. We did have a hard-money loan earlier this spring. Freddie Mac rejected to sell the house to us on a hard-money lender, and so the lawsuits started going at that point.

Tr. of April 27, 2011 conference/hr'g (draft) at 4-6. The court learned during the telephone conference/hearing that the plaintiffs have remained in possession of the property, having successfully dealt with, at least temporarily, an eviction suit, and that the plaintiffs have no equity interest in the property.

Defense counsel argued during the telephone conference/ hearing that, inasmuch as this action was brought post-foreclosure, the law says that the plaintiffs are not entitled to

recover title to the property without tendering the amount owed on the loan that was secured by the deed of trust lien that was foreclosed and that the amount that would have to be tendered would be approximately $140,000.00, thus establishing an amount in controversy in excess of the statutorily-required amount.

With the court's permission, counsel for defendant submitted a brief in support of its position that what plaintiffs really are seeking is the equitable remedy of rescission, and that in order to obtain that remedy, plaintiffs would be required to pay the amount owed on the debt secured by the deed of trust. After having read cases cited in defendant's brief, the court remains unpersuaded that the amount in controversy has been established.[2] Plaintiffs are not litigating over ownership of the property. All plaintiffs are seeking is to buy additional possessory time in the property through means of litigation, with the outside chance that plaintiffs might be able to make some kind of deal with the defendant that would be to the financial advantage of the

---

[2] The court is not persuaded by the cases that a request that the court declare the foreclosure sale invalid is a request for equitable rescission. Moreover, even if the principle of the cases upon which defendant relies had potential relevance to a case of this kind, it does not appear to have relevance to the facts of this particular case because plaintiffs remain in possession of the property. The Texas authorities seem to make clear that a tender of the amount owed as part of an effort to set aside a trustee's deed is never required unless the purchaser at the trustee's sale has taken possession of the property. See Willoughby v. Jones, 251 S.W.2d 508, 510 (Tex. 1952); Jasper State Bank v. Braswell, 11 S.W.2d 1079, 1081-84 (Tex. 1938); Connor Bros. v. Williams, 112 S.W.2d 709, 711 (Tex. 1938).

plaintiffs. Many of the allegations of the state court petition are obviously spurious. No information has been provided to the court that would enable the court to place a value on whatever interest plaintiffs seek to protect by this action. Therefore,

The court ORDERS that the above-captioned action be, and is hereby, remanded to the state court from which it was removed.

SIGNED May 10, 2011.

_____
JOHN McBRYDE
United States District Judge